UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
BESTMAN IHIM,

                      Plaintiff,

          -against-

ST. VINCENT'S HOSPITAL
WESTCHESTER, SHARON HAZNEDAR,

                  Defendants.
-------------------------------------------------------x

**OPINION AND ORDER**

11 Civ. 8024 (JCM)

       Plaintiff Bestman Ihim brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1983,[1] and New York State law, seeking monetary damages from Defendant St. Vincent's Hospital Westchester, his former employer, and Defendant Sharon Haznedar, his former supervisor (together, "Defendants"). The Amended Complaint contains an unspecified federal claim for race and national origin discrimination based on Plaintiff's suspension without pay from March 9, 2011 to March 17, 2011. (Docket No. 5 ¶¶ 38-41). It also contains an unspecified federal claim for "retaliatory discharge." (Docket No. 5 ¶¶ 42-47). The Amended Complaint further contains a state law claim for libel. (Docket No. 5 ¶¶ 45-47).

       Before the Court is Defendants' motion for summary judgment. (Docket No. 35). For the reasons stated below, Defendants' summary judgment motion is granted as to the federal claims, and the Court declines to exercise supplemental jurisdiction over the state law claim.

---

[1] Plaintiff has never alleged "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States] by a person acting under the color of state law." *Williams v. City of New York*, No. 07 Civ. 3764, 2008 WL 3247813, at *2 (S.D.N.Y. Aug. 7, 2008) (quoting *Duamutef v. Morris*, 956 F. Supp. 1112, 1115 (S.D.N.Y. 1997)). Thus, to the extent his Amended Complaint makes out such a claim, the Court deems it abandoned.

## I. BACKGROUND

### A.  Facts[2]

Plaintiff is an African American man.  Although he was born in the United States and is a United States citizen, he was raised for much of his childhood in Nigeria.  He submits that he has an "unmistakable un-American (Nigerian) accent."  Defendants acknowledge that Plaintiff is a member of a protected class.

Plaintiff worked from November 2009 to June 2011 as a Psychiatric Technician at Defendant St. Vincent's Hospital ("Defendant St. Vincent's") in Westchester County, New York.  His duties included monitoring and serving psychiatric patients.  Defendant St. Vincent's maintains a policy that prohibits sexual relationships between its employees and current or former patients.  Plaintiff was aware of this policy.

Between November 2010 and February 2011, three different patients accused Plaintiff of inappropriate sexual conduct.  The first incident allegedly occurred in November 2010 and was raised by a female patient who complained that Plaintiff made inappropriate sexual remarks to her about her lips and body and moved towards her as if to kiss her.[3]  Plaintiff denied that there was any truth to this allegation.  Defendant St. Vincent's personnel investigated the matter, interviewed Plaintiff, and determined that the complaint was unable to be substantiated.

---

[2] The facts described below are taken from the parties' Local Rule 56.1 Statements, the declarations the parties submitted in connection with the instant motion, and the exhibits attached thereto.

[3] The Court notes that, although Plaintiff frequently labels evidence like this "inadmissible hearsay," these statements are not offered for the truth of the matter, i.e., that Plaintiff actually sexually harassed these patients.  In fact, in his opposition to Defendants' 56.1 statement, Plaintiff "admits that Haznedar informed him that allegations of inappropriate sexual relations were made against him by some female mental patients." (Docket No. 46 at 3).  Moreover, Defendants submit documentary evidence of these complaints, and Plaintiff does not question their authenticity.  Accordingly, the Court overrules all of Plaintiff's hearsay objections and considers these statements not for the truth of the matter asserted, but for the limited purpose of demonstrating that these complaints were made against Plaintiff.

The second incident allegedly occurred on February 16, 2011 and was raised by another female patient who complained that Plaintiff teased her by dangling a cigarette in front of her face and putting it down her bra.  The patient alleged that she said "fuck you" to Plaintiff and that Plaintiff repeated the same expletive in response.  The patient, who was ultimately restrained by Plaintiff and six Caucasian male staff members, later complained that she felt as if she was being raped when she was restrained.  She did not allege that she was actually raped.  Plaintiff denies that he cursed at this patient or even held a cigarette at all that night.  The complaint was deemed "unfounded," and Defendant Haznedar, the Administrative Director of Nursing, testified at her deposition that "[a]t no point did I believe that [Plaintiff] put a cigarette in her bra when they were restraining [this patient], because it's not feasible."

The third incident allegedly occurred on February 25, 2011 and was raised by a third female patient who complained that she saw a "tall African American psych tech" touching another female patient's buttocks.  At the time of this allegation, Plaintiff was the only staff member present who fit this description.  Defendant St. Vincent's personnel again conducted an investigation, interviewed Plaintiff, and determined the complaint could not be substantiated.

On March 4, 2011, Defendant Haznedar arranged a meeting with Plaintiff to discuss these complaints.  Plaintiff was accompanied by his union representative; a nurse manager and human resources staff member were also present.  Defendant Haznedar asked Plaintiff where he had previously worked.  According to Plaintiff, Defendant Haznedar also asked him "where I was from."[4]  The meeting was adjourned.

---

[4] On this point, the parties differ.  As Defendant Haznedar tells it, she only learned about Plaintiff's connection to Nigeria when she asked him where he had worked before, to which he responded "in my country."  Defendant Haznedar testified that she then asked "where is that?" to which Plaintiff responded, "Nigeria."

Before reconvening, Defendant Haznedar, who was not an employee at the hospital when Plaintiff was hired, reviewed Plaintiff's employment file.  Defendant Haznedar noticed that Plaintiff's application failed to include ten years of employment history and listed only one reference, which was to a colleague, not a supervisor.  Plaintiff acknowledges that his application was incomplete, as it omitted at least three former employers, two of which had terminated his employment.

On March 9, 2011, the same group convened for a second meeting.  This time, Defendant Haznedar confronted Plaintiff with the deficiencies in his employment application.  She then asked Plaintiff to sign a release of prior employment records, instructing Plaintiff that, if he did not sign the release, he would be suspended without pay.  Plaintiff refused to sign the form, and he was suspended without pay.

Plaintiff then filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that he was suspended due to, *inter alia*, his race and national origin.  He did not advise his employer or anyone at the hospital that he had filed this charge. Defendants became aware of the EEOC charge on or about March 17, 2011.  On March 17, 2011, Defendant St. Vincent's reinstated Plaintiff to his position and awarded him back pay for the time he was suspended.

After returning to work, additional allegations of sexual misconduct were filed against Plaintiff.  The fourth complaint was raised by a female patient who said that an African American staff member told her in the early morning hours on June 3, 2011 that she "shouldn't be tied down with [her] husband" and that she "need[ed] to go out there and fuck, fuck, and fuck."  Plaintiff allegedly also told the patient that "if he saw her on the street he would kill her,"

which the patient interpreted as slang for Plaintiff wanting to have sex with her.  Defendant St. Vincent's conducted an investigation and could not substantiate the patient's allegations.

On June 10, 2011, Defendant Haznedar asked Plaintiff about the fourth alleged incident. Plaintiff denied it.  Defendant Haznedar again asked Plaintiff to release his prior employment records, and Plaintiff refused.  Defendant Haznedar told Plaintiff he must give her his final decision about releasing his records by June 13, 2011.

On June 13, 2011, Defendant St. Vincent's received a fifth and final allegation of sexual misconduct regarding Plaintiff.  This allegation was reported by a former patient who called the hospital to complain that Plaintiff had pursued her romantically after her discharge in June 2010. She alleged that she and Plaintiff ultimately had a sexual relationship, which had since ended, and that she wanted to warn the hospital about Plaintiff's behavior.  When Defendant St. Vincent's interviewed this patient, she was able to confirm Plaintiff's date of birth, former phone number, and email address.  Plaintiff denied the sexual relationship but was unable to explain how the patient knew his personal information.

Following this fifth allegation, Plaintiff was placed on suspension.  Defendant St. Vincent's terminated Plaintiff on June 24, 2011.  At her deposition, Defendant Haznedar testified that she was "very, very concerned about the number of complaints" against Plaintiff.  She continued, "[t]here's no one else working at Saint Vincent's Hospital of Westchester that had five patient allegations, all from female patients, none of them who knew each other, none of who were on the same unit at the same time, and we were very, very worried.  We were very worried in regards to patient safety."

**B. Procedural History**

Plaintiff commenced this action, *pro se*, on November 8, 2011. (Docket No. 2). Plaintiff then filed his Amended Complaint, through counsel, on January 17, 2012. (Docket No. 5). This case was reassigned to the undersigned on April 30, 2014. Defendants filed the instant motion for summary judgment on February 11, 2015. (Docket No. 35). Plaintiff, through his counsel, opposes this motion. (Docket Nos. 43-45).

**II. SUMMARY JUDGMENT STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, the moving party bears the burden of demonstrating that it is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A genuine dispute as to a material fact "exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (internal quotation marks and citation omitted); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Casalino v. N.Y. State Catholic Health Plan, Inc.*, No. 09 Civ. 2583, 2012 WL 1079943, at *6 (S.D.N.Y. Mar. 30, 2012) (internal quotation marks and citation omitted). However, summary judgment—judgment as a matter of law—must be granted if the non-moving party fails to establish the existence of a dispute on an essential element of the case and on which it bears the burden of proof at trial. *Celotex*, 477 U.S. at 322.

In reviewing a motion for summary judgment, the Court "must draw all reasonable inferences in favor of the [non-moving] party" and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000) (citations omitted).  However, the Court may not weigh the evidence or determine the truth of the matter. *Anderson*, 477 U.S. at 249.  Credibility determinations, the drawing of legitimate inferences from the facts, and evaluating ambiguous acts are functions of the jury, not the judge. *Reeves*, 530 U.S. at 150 (quotation marks and citation omitted); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 75 (2d Cir. 2001). "Summary judgment is inappropriate when the admissible materials in the record make it arguable that the claim has merit." *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (quotation marks and citations omitted).  In other words, summary judgment should only be granted where "it is quite clear what the truth is." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 546 (2d Cir. 2010) (quotation marks and citation omitted).

In the Southern District of New York, parties moving for and opposing summary judgment motions must also submit short and concise statements of facts, supported by evidence that would be admissible at trial. Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules").  The opposing party must specifically controvert the moving party's statement of material facts, or the moving party's facts will be deemed admitted for purposes of the motion. Rule 56.1(c) of the Local Rules. Moreover, "each statement controverting any statement of material fact[] must be followed by citation to evidence which would be admissible . . . . Rule 56.1(d) of the Local Rules. Nonetheless, the Court has discretion "to conduct an assiduous review of the record even where

one of the parties has failed to file such a statement." *Holtz*, 258 F.3d at 73 (quotation marks and citation omitted); *see also* Fed. R. Civ. P. 56(c)(1)(B)(3).

## III. DISCUSSION

Defendants move for summary judgment as to each claim in the Amended Complaint. For the reasons set forth below, Defendants' motion is granted as to the federal claims, and the Court declines to exercise supplemental jurisdiction over the state law claim.

### A.  "Suspension without Pay"

Plaintiff claims that his suspension from March 9, 2011 to March 17, 2011 was the product of race and national origin based discrimination.  Defendants contend that Plaintiff fails to make a *prima facie* showing of discrimination.  Alternatively, Defendants argue that Plaintiff fails to offer sufficient evidence to support a rational finding that Defendants' legitimate non-discriminatory reasons for suspending him were pretext for discrimination.

### 1.  Applicable Law

Title VII prohibits discrimination against an employee based on his race or national origin. 42 U.S.C. § 2000e-2(a).  Such claims "are governed at the summary judgment stage by the burden-shifting analysis first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015).  Under this framework, Plaintiff bears the burden of establishing a *prima facie* case of discrimination by showing:  "(1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Id.* at 435 (internal quotation marks and citation omitted).  As the Second Circuit has held, "plaintiff's *prima facie* burden [is] 'minimal' and 'de minimis.'" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005).

If the plaintiff establishes a *prima facie* case, "a rebuttable presumption of discrimination arises and the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision." *Stratton v. Dep't for the Aging of New York*, 132 F.3d 869, 879 (2d Cir. 1997).  If the defendant proffers such a reason, "the pattern of presumptions and burden shifts established by *McDonnell Douglas* . . . drops away . . . ." *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 114 (2d Cir. 2007) (citations omitted), *abrogated on other grounds by Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 177-78 (2009).  At this point, "the burden shifts back to the plaintiff to demonstrate by competent evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (internal quotation marks and citation omitted); *see also Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013) (citation omitted) ("[T]he burden is on the plaintiff to point to evidence that reasonably supports a finding of prohibited discrimination; otherwise, the defendant is entitled to summary judgment.").

"In determining whether the articulated reason for the action is a pretext, 'a fact-finder need not, and indeed should not, evaluate whether a defendant's stated purpose is unwise or unreasonable.  Rather, the inquiry is directed toward determining whether the articulated purpose is the actual purpose for the challenged employment-related action.'" *Beachum v. AWISCO New York*, 785 F. Supp. 2d 84, 94 (S.D.N.Y. 2011) (quoting *DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 170-71 (2d Cir. 1993)); *see also Dister v. Continental Grp.*, 859 F.2d 1108, 1116 (2d Cir. 1988) ("A business decision need not be good or even wise.  It simply has to be nondiscriminatory . . . .") (internal quotation marks and citation omitted).  As the Supreme Court has instructed, "[t]he ultimate burden of persuading the trier of fact that the defendant

- 9 -

intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (citations omitted).

## 2. Analysis

Applying the *McDonnell Douglas* standard to this case, the Court finds that Plaintiff cannot satisfy his "minimal" burden in establishing a *prima facie* case of race and national origin discrimination. Even if the Court were to conclude that Plaintiff met his burden, Plaintiff has not set forth sufficient evidence to show that Defendants' proffered nondiscriminatory reasons for his termination were pretextual.

### a. Step One—*Prima Facie* Case

Plaintiff satisfies the first three elements in making out a *prima facie* case for race and national origin discrimination. First, Plaintiff is an African American, and, although he was born in the United States, Nigeria is the "country from which his . . . ancestors came." *Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86, 88 (1973) (citations omitted). Thus, he is a member of two protected classes. Second, Defendants advance no serious argument against Plaintiff's qualifications for his position. *See Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001) (for this element, "plaintiff must show only that he possesses the basic skills necessary for performance of the job") (internal quotation marks, citation, and alterations omitted). Third, although Plaintiff was ultimately awarded back pay for his suspension, his suspension was initially unpaid. Thus, his suspension plainly constituted an adverse employment action. *See, e.g., Porter v. Donahoe*, 962 F. Supp. 2d 491, 501 (E.D.N.Y. 2013) (holding that an "unpaid suspension . . . is obviously adverse"); *see also Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir.2001)) ("[T]he weight of authority from within this Circuit makes clear[] that a plaintiff's unpaid suspension . . . constitute[s an] adverse employment action[].").

The fourth element requires Plaintiff to demonstrate "that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Tolbert*, 790 F.3d at 435.  Plaintiff argues that an inference of discriminatory intent arises for a number of reasons.  First, Plaintiff contends that the three complaints that led to his suspension were never proven.  Second, Plaintiff submits that, in one of the first three incidents, six Caucasian male employees were also involved, yet only Plaintiff was investigated.  Third, Plaintiff argues that, when Defendant Haznedar confronted Plaintiff about the three complaints against him, she asked him where he had worked before and "where [he] was from."  Plaintiff "believes that it is his un-American foreign accent that caused Haznedar to ask him about his place of birth . . . ."  Fourth, Plaintiff argues that Defendant Haznedar now denies having asked this question and maintains that the "denial, in itself, suggests [her] appreciation that" her question revealed her discriminatory animus.[5]

Although Plaintiff's burden in establishing a *prima facie* case for discrimination is minimal, the Court finds that Plaintiff has fallen short.  Some of Plaintiff's arguments are easily rejected.  For example, although he concludes that he felt discriminated against, "feelings and perceptions of being discriminated against are not evidence of discrimination." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999) (internal quotation marks, alterations, and citations omitted).  Similarly, although the three complaints that led to his suspension were never substantiated, this does not, in any way, suggest that his suspension was motivated by racial

---

[5] Plaintiff's argument that Defendant Haznedar now denies having asked this question—and that this is somehow evidence of her discriminatory intent—is wholly unpersuasive.  In fact, this argument mischaracterizes the evidence.  As Defendant Haznedar explained at her deposition, she only learned about Plaintiff's connection to Nigeria when she asked him where he had worked before, to which he responded "in my country."  Defendant Haznedar testified that she then asked "where is that?" to which Plaintiff responded, "Nigeria."  To be clear, the Court does not credit this testimony as truthful for the purpose of this motion, as it draws inferences in Defendants', not Plaintiff's, favor.  However, Plaintiff cannot use this testimony to impute discriminatory intent because Defendant Haznedar never denied having asked "where" Plaintiff was from.

discrimination. Moreover, Plaintiff's argument that he was treated differently than the six Caucasian male employees involved in one of the incidents fails to acknowledge that the complaint against him was unique[6] and that he was the only one involved who was the subject of multiple complaints. Indeed, Plaintiff offers no evidence that any other employee of Defendant St. Vincent's was treated differently after being the subject of three sexual harassment complaints in close proximity to each other by three different patients.

Plaintiff's main argument concerns Defendant Haznedar's question, "where [are you] from[?]" This question was allegedly posed after Defendant Haznedar had confronted Plaintiff with the three allegations against him and asked where he had previously worked. The Second Circuit has held that "circumstances that give rise to an inference of discriminatory motive include actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus . . . ." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996) (citing *Ostrowski v. Atlantic Mut. Ins. Cos.*, 968 F.2d 171, 182 (2d Cir. 1992)). However, there is nothing discriminatory on the face of this question. Moreover, a question like this "would not even qualify as a 'stray remark,' since it was a question, not a remark." *Offutt v. Gannett Satellite Info. Network, Inc.*, No. 98 Civ. 0766, 1998 WL 872443, at *3 n.1 (S.D.N.Y. Dec. 14, 1998) (supervisor's question—"how old [is the plaintiff?]"—is not discriminatory in an age and race discrimination suit).

The sole discriminatory statement that Plaintiff attributes to Defendants is the simple question, "where [are you] from?" There are no other allegations that, during the course of his employment, Plaintiff was the subject of discriminatory comments about his race or national origin. Even if the Court found that this question—"where [are you] from?"—would qualify as a

---

[6] The complainant in that situation alleged that Plaintiff was the only one who taunted her with a cigarette and threw the cigarette down her bra.

"stray remark," the Court would have to consider the factors set out by the Second Circuit to determine if the remark was probative of any discriminatory animus. As the Second Circuit has explained:

> In determining whether a remark is probative, [courts in this circuit] have considered four factors: (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process).

*Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010) (collecting cases). Considering these factors, particularly factors three and four, the Court finds that Defendant Haznedar's question is not probative of a discriminatory animus. As noted above, there is nothing discriminatory in the content of the question. Thus, a reasonable juror could not view it as discriminatory. Moreover, the context in which the question was asked does not suggest any discriminatory animus. Plaintiff admits that Defendant Haznedar asked the question after confronting him with the accusations against him and asking where he had worked before.

As the Second Circuit has held, even "stray remarks . . . made by a decisionmaker[] do not constitute sufficient evidence to make out a case of employment discrimination" without any "other indicia of discrimination . . . ." *Danzer v. Norden Systems. Inc.*, 151 F.3d 50, 56 (2d Cir. 1998). In short, based on the facts Plaintiff has put forth, he "cannot get [his] discrimination suit to a jury[.]" *Id.*

Even if Plaintiff could satisfy his *prima facie* burden, his case would still fail at the third step of the *McDonnell Douglas* framework.

**b. Step Two—Nondiscriminatory Reason**

Defendants have advanced two legitimate, nondiscriminatory explanations for their suspension of Plaintiff. First, Defendants point to the three allegations that Plaintiff violated

Defendant St. Vincent's policy against sexual relationships between its employees and patients by acting inappropriately towards patients at work. Second, Defendants rely on Plaintiff's refusal to cooperate with their investigation into his employment history after these three allegations were made. These reasons are plainly nondiscriminatory, as they have nothing to do with Plaintiff's race or national origin. Moreover, the reasons are supported with documentary evidence, and Plaintiff does not deny that the complaints were made about him. Finally, Plaintiff does not deny that he refused to sign a release of his prior employment records. Although Plaintiff argues that he was not required to provide such a release under his collective bargaining agreement, that argument is irrelevant here. Accordingly, Defendants have sufficiently proffered two nondiscriminatory explanations for Plaintiff's suspension.

**c. Step Three—Evidence of Pretext**

Plaintiff has failed to demonstrate that Defendants' explanations are pretextual. As noted above, Plaintiff has the ultimate burden "to point to evidence that reasonably supports a finding of prohibited discrimination . . . ." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013). Plaintiff cannot meet that burden for essentially the same reasons that he cannot make out a *prima facie* case of discrimination.

Plaintiff offers no persuasive argument why Defendants' proffered reasons to suspend him were not truthful. Defendant St. Vincent's suspended Plaintiff after receiving three complaints that he acted inappropriately, and in a sexual manner, towards patients. Although Plaintiff argues that six Caucasian men were involved in one of the three incidents, the patient in that incident alleged that only Plaintiff provoked her with a cigarette and that only Plaintiff threw a cigarette down her bra. The allegations against Plaintiff were therefore unique. Moreover, Plaintiff offers no evidence that any other employee of Defendant St. Vincent's was the subject

of three sexual harassment complaints and yet was treated differently than he was.  To the extent he argues disparate treatment, that argument is wholly conclusory and carries no weight.

Third, Defendant Haznedar's question—"where are you from?"—is not sufficient to demonstrate that Defendants' proffered reasons for Plaintiff's suspension were pretextual. Plaintiff's discrimination case essentially comes down to this single question.  Plaintiff offers no evidence that he was the subject of any negative comments about his race or national origin. Construing the facts in Plaintiff's favor, the Court cannot find this isolated question sufficient to give rise to an inference of discriminatory intent.  At worst, Plaintiff has identified a "stray remark," which, under Second Circuit precedent, "cannot get a discrimination suit to a jury" without "other indicia of discrimination . . . ." *Danzer*, 151 F.3d at 56.

As the Second Circuit has instructed, "[t]he more a remark evinces a discriminatory state of mind . . . , the more probative that remark will be." *Tomassi*, 478 F.3d at 115.  Defendant Haznedar's question, however, is more innocuous than truly discriminatory comments that courts have disregarded as stray. *See, e.g.*, *Pibouin v. CA*, 867 F. Supp. 2d 315, 324 (E.D.N.Y. 2012) (granting summary judgment against a plaintiff of French descent despite his supervisor's comment that he "hates people with strong accents").

"[A]n inference of discrimination may be drawn from a showing that the employer criticized the plaintiff's performance in ethnically degrading terms, made invidious comments about others in the employee's protected group, or treated employees not in the protected group more favorably." *Hunter v. St. Francis Hosp.*, 281 F. Supp. 2d 534, 542 (E.D.N.Y. 2003).  Here, however, Plaintiff does not allege any of that.  To the contrary, Plaintiff merely alleges that Defendant Haznedar asked him "where" he was from after asking him where he had worked before.  Without more, this question is insufficient to establish an inference of discrimination—

- 15 -

particularly in light of Defendants' proffered nondiscriminatory reasons for suspending Plaintiff, which Plaintiff has done little to attack.

In sum, the Court concludes "that no reasonable jury could find that detailed and consistent concerns with [P]laintiff's [behavior at work] were only a pretext for adverse employment actions that were really motivated by racial bias." *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 586 F App'x 739, 744 (2d Cir. 2014) (citation omitted). The Court therefore grants Defendants summary judgment as to this claim.

## B. "Retaliatory Discharge"

Plaintiff claims that Defendants terminated him in retaliation for filing his EEOC charge, in which he complained that he was suspended due to, *inter alia*, his race and national origin. Defendants argue that Plaintiff fails to make a *prima facie* showing of retaliation and that, alternatively, Plaintiff cannot rebut their legitimate explanation for his termination.

"To state a prima facie case of retaliation under Title VII, a plaintiff must proffer evidence that he engaged in a protected activity, such as complaining about race discrimination, and that his employer took an adverse action in retaliation." *Kirkland v. Cablevision Systems*, 760 F.3d 223, 225 (2d Cir. 2014) (citation omitted). Once the plaintiff makes a *prima facie* case for retaliation, "the burden shifts to the employer to give a legitimate, non-discriminatory reason for its actions." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802). As with a discrimination claim, once the employer proffers a legitimate reason for its actions, "the burden then shifts back to the plaintiff to show that the employer's explanation is a pretext" for retaliation. *Id.* To survive summary judgment, the plaintiff's "admissible evidence must show that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* (internal quotation marks and citations omitted).

The element at issue in this case is whether Plaintiff has established "a causal connection between the protected activity and the adverse employment action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (internal quotation marks and citation omitted).  While "a plaintiff can indirectly establish a causal connection to support a retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action," *Zann Kwan*, 737 F.3d at 845 (internal quotation marks and citations omitted), many courts in the Second Circuit "have held that periods of two months or more defeat an inference of causation." *Corbett v. Napolitano*, 897 F. Supp. 96, 113 (E.D.N.Y. 2012) (internal quotation marks and citations omitted) (collecting cases).  Moreover, "[t]emporal proximity alone is insufficient to defeat summary judgment at the pretext stage." *Zann Kwan*, 737 F.3d at 847 (citing *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010)).

Plaintiff fails to establish a *prima facie* case for retaliation because he cannot demonstrate a causal connection between his EEOC charge and his termination.  Defendants learned that Plaintiff filed an EEOC charge on or about March 17, 2011.  However, Plaintiff was terminated more than three months later, on June 24, 2011.  Thus, the time period between Plaintiff's EEOC charge and his termination does not weigh in favor of finding a discriminatory intent.  Moreover, two significant events took place between those dates.  First, Defendant St. Vincent's received a complaint that Plaintiff had given a female patient advice about her sex life and had led the patient to believe that he wanted to have sex with her.  Second, another female patient contacted the hospital to complain about a sexual relationship she had with Plaintiff.  These "intervening event[s] between the protected activity and the adverse employment action . . . defeat the inference of causation where temporal proximity might otherwise suffice to raise the inference." *Joseph v. Marco Polo Network, Inc.*, 09 Civ. 1597, 2010 WL 4513298, at *18 (S.D.N.Y. Nov.

10, 2010) (citations omitted) (collecting cases).  In short, these facts do not give rise to an inference that Defendant St. Vincent's terminated Plaintiff in retaliation for his EEOC charge.

Even if Plaintiff could establish a *prima facie* case for retaliation, he cannot prove that, but for his EEOC charge, he would not have been terminated.  As explained above, Plaintiff must establish but-for causation, which requires him to prove that his termination would not have occurred in the absence of a retaliatory motive.  A reasonable jury could not conclude that, had Plaintiff not filed an EEOC charge, he would not have been terminated after Defendants' receipt of five separate allegations that Plaintiff committed sexual misconduct at work. *See Dall v. St. Catherine of Siena Medical Ctr.*, 966 F. Supp. 2d 167, 196 (E.D.N.Y. 2013).  Therefore, Defendants' motion for summary judgment as to Plaintiff's retaliation claim is granted.

## C. Libel

28 U.S.C. § 1367(c)(3) prescribes that a federal court "may decline to exercise supplemental jurisdiction" over a claim if the court "has dismissed all claims over which it has original jurisdiction."  In fact, the Supreme Court has instructed that lower courts should ordinarily decline to exercise jurisdiction when the federal claims are dismissed before trial. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).  Accordingly, having dismissed all of Plaintiff's federal claims, the Court declines to exercise jurisdiction over the remaining state law claims.

**IV. CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment is granted. The Clerk is respectfully requested to terminate the pending motion (Docket No. 35) and close the case.

Dated:    September 24, 2015
          White Plains, New York

SO ORDERED:

JUDITH C. McCARTHY
United States Magistrate Judge

- 19 -